# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2733

_____

| | |
|---|---|
| Clarence Washington; | * |
| Flora Jean Washington, | * |
| | * |
| Appellants, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri |
| | * |
| Drug Enforcement Administration, | * |
| | * |
| Appellee. | * |

_____

Submitted: March 8, 1999

Filed: July 26, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
      SACHS,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western
District of Missouri, sitting by designation.

Clarence Washington and Flora Jean Washington (hereinafter "the Washingtons") appeal from a final order entered in the United States District Court[2] for the Eastern District of Missouri granting judgment in favor of the Drug Enforcement Administration (DEA) (hereinafter "the United States").  Their suit, under the Federal Tort Claims Act (FTCA), asserted that DEA agents obtained and executed a search warrant for their house in an unreasonable and reckless manner in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and in violation of Missouri's assault and battery and abuse of process laws.  Following a bench trial, the district court held that the United States cannot be found liable for constitutional torts under the FTCA and that the agents' conduct did not constitute assault and battery or abuse of process under Missouri law. See Washington v. DEA, No. 4:92-CV-2285 (E.D. Mo. May 19, 1998) (Washington) (Memorandum).  For reversal, the Washingtons argue that the district court erred in finding that (1) the FTCA does not include constitutional violations; (2) the government agents did not commit assault and battery under Missouri law; and (3) the government agents did not commit the tort of abuse of process under Missouri law.  For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. § 1346 and 28 U.S.C. § 2671 et seq.  Jurisdiction in this court is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed R. App. P. 4(a).

## Background

---

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

The parties basically agree on the underlying facts and the following statement of facts is taken in large part from the district court memorandum. The Washingtons are husband and wife and at the time of the incident were 72 and 60 years old, respectively. Neither has a criminal record or has ever been the subject of a criminal investigation. They own a single-family house at 5920 McArthur in the City of St. Louis and have been the sole occupants since 1968. The Washingtons possess the only keys to the residence. The houses on McArthur are "remarkably similar in outward appearance," that is, single-family, one-story bungalows constructed of red brick, with aluminum awnings and metal security doors. Washington, slip op. at 3.

In January 1991, Donald Mendrala had been a DEA special agent for more than three and a half years. In 1987 Agent Mendrala became involved in an investigation of a national organization, known as the Moorish Science Temple of America (MSTA), that was suspected of drug trafficking, murder, and other related crimes. The St. Louis chapter, led by Jerry Lee Lewis-Bey, was located at 754 West Florissant. On November 22, 1990, DEA agents arrested Gary Caldwell, a convicted felon and MSTA member, for unlawful possession of a machine gun.[3] In exchange for Caldwell's assistance in investigating the MSTA, the government agreed not to prosecute him for any crimes he may have committed while affiliated with the organization.

Caldwell told investigators that he had distributed narcotics for Jerry Lee Lewis-Bey and that on November 4, 1990, he and other MSTA members weighed two kilograms of cocaine at 5920 McArthur. According to Caldwell, the scale used to weigh the cocaine was still at the house. The government subjected Caldwell to a polygraph test several times[4] and had him point out the house to investigators. Agent

_____

[3]Caldwell had an Uzi in his possession so that he could carry out a contract killing for the MSTA.

[4]It is unclear from the record whether the lie detector tests confirmed Caldwell's truthfulness with respect to the information about 5920 McArthur.

Mendrala did not, however, independently corroborate the information with respect to 5920 McArthur or attempt to determine the identity of the occupants.

Agent Mendrala prepared a master affidavit for fifteen search warrants for various suspected MSTA locations in St. Louis City and County, including the Washingtons' residence at 5920 McArthur. The only information the DEA had concerning that particular address came directly from Caldwell. The magistrate judge[5] issued the search warrants for narcotics; narcotics paraphernalia; firearms; documents and records relating to travel, concealment of money, and occupancy or residency of the premises searched; money; photographs; pagers; and other items described on the list appended to the application and affidavit. The search warrant for 5920 McArthur did not authorize a night-time execution, although the application expressly requested such authorization.

In the early evening on January 9, 1991, law enforcement officers assembled at the St. Louis Metropolitan Police Department's headquarters to coordinate the execution of the search warrants. The officers wanted to execute the search warrants simultaneously, but did not have enough personnel to do so. Instead, the officers organized into teams that would each execute several of the search warrants. Apparently, the Washingtons' residence was the last location searched by one particular team.

The Washingtons were asleep in bed when the officers arrived at 5920 McArthur at approximately 12:30 a.m. The officers entered the residence by force, using a battering ram to break down the front door. There is some dispute, however, regarding whether the officers knocked on the front door and announced their presence before going inside. The government maintained that before the officers entered the residence,

_____

[5]The Honorable David D. Noce, Chief United States Magistrate Judge for the Eastern District of Missouri.

-4-

one officer knocked on the bedroom window while another agent knocked on the outside door. The government asserted that the officers entered the house only after announcing that they were police officers with a search warrant and after hearing one of the occupants inside respond, "go away." Unlike the government's version, the Washingtons asserted that the officers did not knock and announce their presence before entering the residence by force. Relying on their next door neighbor as an eyewitness,[6] the Washingtons asserted that the officers simply approached the house and, without knocking or announcing their identity or purpose, used the battering ram to break down the front door.

The officers entered the residence with their weapons drawn.[7] The officers encountered Clarence Washington in the dining room where they shouted at him to raise his hands, threatened to shoot him if he disobeyed the order, shoved him, and ordered him to sit. Flora Jean Washington was also ordered, at gunpoint, to comply with the officers' orders. The Washingtons were detained while the officers conducted a thorough search of the residence. Although the Washingtons were not physically injured as a result of the search, they did suffer emotional distress, and several items in the house, including furniture, carpets, doors, and an antique trunk, were damaged. The officers did not find any narcotics or drug paraphernalia that suggested a connection between the Washingtons and the MSTA or its members. The officers did, however, find and seize three firearms, ammunition, and certain personal papers. An

---

[6]The Washingtons' next door neighbor was still awake when the officers arrived at their house. Observing from her porch, the neighbor testified that she saw the officers exit their vehicles, approach the house, and break open the front door.

[7]Although there is no express DEA policy concerning how to execute a search warrant, agents testified that it is customary for officers to have their weapons drawn for their protection and to use loud and forceful language in order to gain control over individuals who may be inside the premises. See Washington v. DEA, No. 4:92-CV-2285, slip op. at 5 (E.D. Mo. May 19, 1998).

officer gave the Washingtons a copy of the search warrant and a receipt for the items seized. However, the list of items seized was not attached to the copy of the search warrant and the carbon copy receipt given to the Washingtons did not list the ammunition and personal papers. The original receipt was later amended to include these items. Furthermore, the name provided on the receipt did not correspond with that of any agent involved in the search.

The Washingtons unsuccessfully sought an explanation of why their house had been searched, compensation for property damage, and return of the property seized. They then filed this action in federal district court, alleging that the officers obtained and executed the search warrant in an unreasonable and reckless manner, in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. The Washingtons further claimed that the officers' actions constituted assault and battery and that the search was an abuse of process under state law. The Washingtons brought this action in two counts: count one was a FTCA claim against the DEA, Department of Justice (DOJ), and the United States; count two was a 42 U.S.C. § 1983 civil rights claim against several individual St. Louis Metropolitan Police officers. The civil rights claim was tried to a jury and was dismissed at the close of the Washingtons' case. The district court then found in favor of the remaining defendants (DEA, DOJ, US) on the FTCA claim. See Washington, slip op. at 15. The district court held that the FTCA did not include constitutional torts, and that, under Missouri law, the officers' actions in executing the search warrant did not constitute assault and battery or abuse of process. See id. at 10-11, 14. This appeal followed.

## Discussion

The Washingtons first argue that the district court erred in holding that the United States cannot be found liable under the FTCA for constitutional violations committed by its law enforcement officers. Citing Carlson v. Green, 446 U.S. 14, 19-20 (1980), the Washingtons contend that the FTCA provides a private cause of action

against the United States for the constitutional violations committed by the DEA agents who searched their residence. The Washingtons argue that it is "crystal clear that Congress views FTCA and <u>Bivens</u> [8] as parallel, complementary causes of action." <u>Id.</u> at 19. The Washingtons argue that the officers recklessly failed to corroborate the information provided by Caldwell, and that the manner and degree of force used by the officers (battering ram, drawn guns, time of day, failure to knock and announce, destruction of property, failure to list all the items seized) were unreasonable and reckless, amounting to Fourth, Fifth, and Fourteenth Amendment violations. The Washingtons contend that the 1974 amendment to the FTCA specifically abrogated the government's sovereign immunity with respect to constitutional violations by its law enforcement agents.

We review the district court's findings of fact for clear error and conclusions of law *de novo*. <u>See</u>, e.g., <u>Celestine v. United States</u>, 841 F.2d 851, 853 (8th Cir. 1988) (per curiam).

We first consider the district court's determination that constitutional torts are not actionable under the FTCA. The United States may be held liable for negligent or wrongful acts by federal employees committed while acting within the scope of their employment under the FTCA. Specifically, 28 U.S.C. § 1346(b)[9] grants federal district

---

[8]Under <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388 (1971), parties have a cause of action against the individual law enforcement agents who are responsible for constitutional rights violations.

[9]28 U.S.C. § 1346(b) provides in relevant part:

> The district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his [or her] office or employment, under

courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity. The United States is liable to the same extent that a private person under like circumstances would be liable to the claimant in accordance with the law of the place where the act or omission occurred. See id.; see also 28 U.S.C. § 2674 (1994).The "law of the place" refers to the substantive law of the state where the wrongful conduct took place. See FDIC v. Meyer, 510 U.S. 471, 477-78 (1994). Moreover, courts have considered "under like circumstances" to mean that there must be a private analogue to the government's conduct. See Wright v. United States, 963 F. Supp. 7, 16-17 (D.D.C. 1997) (finding that "the discrete act of applying for a search warrant is not reviewable under the FTCA" since the act "has no analogous counterpart for private citizens").

We hold that the district court did not err in concluding that the Washingtons' constitutional tort claim was not actionable under the FTCA. "Because the 'law of the place' refers to state law, and state law cannot provide liability for the violation of a federal constitutional right, constitutional wrongs cannot be remedied through the FTCA." Russ v.United States, 62 F.3d 201, 204 (7th Cir. 1995) (citing FDIC v. Meyer, 510 U.S. at 478); see Roundtree v. United States, 40 F.3d 1036, 1038 (9th Cir. 1994). Furthermore, the application process for, and execution of, a search warrant has no private analogue. See Wright, 963 F. Supp. at 16-17. Thus, there is no comparable situation to the instant case where a private individual could be held liable under state law.

Furthermore, the Washingtons' reliance on Carlson v. Green and the 1974 amendment is misplaced. In Carlson v. Green, the Supreme Court held that FTCA and Bivens actions are "complementary," rather than integrated causes of action. See 446

---

circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

U.S. at 20-21. That is, <u>Carlson v. Green</u> does not mean that a claimant can bring a constitutional tort cause of action under the FTCA. Rather, victims of purposeful wrongdoing on the part of federal law enforcement officers can bring specified intentional tort claims under the FTCA and constitutional tort claims under <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388 (1971). <u>See</u> <u>Carlson v. Green</u>, 446 U.S. at 20-21; <u>see also</u> <u>FDIC v. Meyer</u>, 510 U.S. at 478. In fact, this conclusion is actually supported by the text of the 1974 amendment. Congress included an exclusion for intentional torts such as assault, battery, and abuse of process in the original version of the act. <u>See</u> Federal Tort Claims Act § 421 (1946). However, in 1974 Congress amended this section to provide that "investigative or law enforcement officers" can be held liable for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). The amendment abrogated the government's sovereign immunity under the FTCA only with respect to those enumerated torts, not constitutional ones. <u>See</u> <u>id.</u>; <u>see also</u> <u>Primeaux v. United States</u>, No. 97-2691, 1999 WL 407719, at *7 (8th Cir. June 17, 1999) (en banc) (Lay., J., dissenting). Therefore, constitutional tort claims are not cognizable under the FTCA.

The Washingtons next argue that the district court erred in finding that the officers' conduct did not constitute assault or battery under Missouri law. Assault and battery are among the intentional torts for which federal law enforcement officers can be held liable under the FTCA. <u>See</u> 28 U.S.C. § 2680(h). The Washingtons argue that the officers aimed weapons at them, threatened to shoot them, and shouted at and shoved them. The Washingtons argue that such conduct was more than enough to constitute assault and battery under Missouri law.

Under Missouri law, a private individual commits assault and battery if he or she purposefully puts another person in apprehension of offensive contact or if he or she knowingly causes offensive physical contact with another person. <u>See</u> MO. ANN. STAT. § 565.070 (West 1979). However, "[w]hile it may be unlawful in given circumstances for the private individual to touch the person of another, it is entirely lawful for an

-9-

officer clothed with a warrant to do so, provided he [or she] uses no more force than is reasonably necessary."[10]  Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987). Missouri law permits officers to take appropriate action to ensure their safety while executing search warrants.  See State v. Shannon, 835 S.W.2d 406, 408 (Mo. Ct. App. 1992) (citing United States v. Patterson, 885 F.2d 483, 484 (8th Cir. 1989)); see also Michigan v. Summers, 452 U.S. 701, 702-03 (1981) (holding that the risk of harm to both the officers and occupants is substantially reduced if law enforcement officers exercise immediate and unquestioned command of the situation).  Therefore, we must determine whether the officers acted reasonably when they entered the residence with their weapons drawn and shouted at and shoved the Washingtons.

We hold that the district court did not error in finding that the officers' conduct did not constitute assault or battery under Missouri law.  The district court found that the officers entered what they reasonably believed to be a location associated with narcotics and occupied by drug dealers who were suspected of several murders.  The officers sought to gain immediate control of the situation, in order to protect themselves and the occupants, by drawing their weapons and using forceful language and conduct. We agree with the district court's  finding that, "while this show of force may have intimidated the [Washingtons] and offended their sensibilities, it was not unreasonable under the circumstances." Washington, slip op. at 14.  The record supports the district court's finding that the officers' actions were consistent with trying to secure the premises so that they could execute the search warrant.  Although the officers did use a significant amount of force, under the circumstances we cannot say that it was unreasonable to do so.

---

[10]Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987), involved an arrest warrant, where it is manifest that there will be physical contact between the officer and the claimant.  We believe that the execution of an arrest warrant is sufficiently analogous to the execution of a search warrant, at least for purposes of a claim that the officers used force in excess of that reasonably necessary to execute the search warrant.

Finally, the Washingtons argue that the district court erred in concluding that the officers did not commit the tort of abuse of process. The Washingtons argue that they established all of the elements of the tort at trial and that the district court failed to apply Missouri law correctly. The Washingtons argue that the lack of corroboration, time of execution, and incorrect name on the receipt all constitute abuse of process with respect to search and seizure laws.

To establish a claim of abuse of process under Missouri law, the plaintiff must show that: (1) the defendant made an illegal or improper or perverted use of the process; (2) such use was neither warranted nor authorized by the process; (3) the defendant had an improper purpose in exercising the use of process; and (4) damage resulted. See, e.g., Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. 1990) (en banc). "The essence of a claim for abuse of process is the use of process for some collateral purpose." Jenkins v. Revolution Helicopter Corp., 925 S.W.2d 939, 945 (Mo. Ct. App. 1996).

We hold that the district court correctly found that the officers' conduct in preparing and executing the search warrant for 5920 McArthur did not constitute an abuse of process under Missouri law. Although the DEA agents failed to corroborate Caldwell's information about the house and executed the search warrant at night, these actions or omissions do not constitute an abuse of process because there was no collateral purpose. We agree with the district court's conclusion that the Washingtons "have not shown either that Mendrala had some improper purpose in obtaining a warrant to search their home or that his conduct was motivated by an improper or wrongful impetus." Washington, slip op. at 15.

**Conclusion**

For the reasons stated, we hold that the district court did not err in holding that constitutional torts cannot be remedied under the FTCA and that the officers' conduct

-11-

did not constitute assault and battery or abuse of process under Missouri law. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT