■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISA W. GRAY, Appellant. [751 NYS2d 652] —Lahtinen, J. Appeal from a judgment of the County Court of Essex County (McGill, J.), rendered June 23, 2000, upon a verdict convicting defendant of the crimes of manslaughter in the second degree, criminal possession of a weapon in the third degree and promoting prison contraband in the first degree.

On May 30, 1999, a dispute over a game of chess led to the death of one of the inmate participants. Defendant and Vernon Miller were incarcerated at Ray Brook Federal Correctional Institution in the Town of North Elba, Essex County, and engaged in a game of chess premised upon the wager that the loser would do 25 push-ups. Following one of the games, an argument erupted over the push-ups. Disparate versions of the events occurring thereafter were presented at trial. The People

presented proof, including the testimony of three inmate eyewitnesses, that defendant instigated an aggressive confrontation and, armed with a knife-like weapon known in prison parlance as a "shank," stalked Miller around the prison's recreation area. Defendant eventually lunged over a pool table and stabbed Miller near the collarbone, lacerating the subclavian artery, which resulted in Miller bleeding to death. Defendant, testifying on his own behalf, contended that Miller was the initial aggressor, that Miller was armed with both a razor blade and a prison weapon fashioned by placing a lock in a sock, and that he stabbed Miller in self-defense. Defendant further contended at trial that Miller's death was caused by an alleged protracted delay by prison personnel in providing appropriate treatment to Miller. Although charged with, among other things, murder in the second degree, defendant was convicted following a jury trial of manslaughter in the second degree, criminal possession of a weapon in the third degree and promoting prison contraband in the first degree. He was sentenced to concurrent terms of incarceration of 7½ to 15 years for manslaughter, 1½ to 3 years for possessing a weapon and 1⅓ to 3 years for promoting prison contraband. Defendant appeals.

Defendant initially argues that Miller's death was caused by the alleged failure of prison personnel to provide prompt and proper treatment to Miller and, thus, the manslaughter conviction is against the weight of the evidence. Inadequate care following an assault constitutes a viable defense "only where the death is solely attributable to the secondary agency, and not at all induced by the primary one" (*People v Kane*, 213 NY 260, 270; *see People v Griffin*, 80 NY2d 723, 726-727, *cert denied* 510 US 821; *People v Stewart*, 40 NY2d 692, 697). Thus, we have previously held that where "it was the stab wound itself that caused [a] life-threatening condition to develop in the first instance," ensuing improper medical care "does not relieve the assailant from liability for homicide" (*People v Davis*, 243 AD2d 831, 832). Here, defendant stabbed Miller near the neck, severing an artery. Even assuming, as contended by defendant, that Miller was not transported to a hospital for an hour after the assault and died 45 minutes after arriving at the hospital, the delay in providing medical care does not extinguish defendant's culpability since his actions clearly created the life-threatening situation. The jury's verdict was supported by legally sufficient evidence and was not against the weight of the evidence.

Next, defendant argues that County Court improperly restricted his efforts to introduce evidence both about Miller's

purported prior violent acts and Miller's reputation. Although this issue was not properly preserved, our review of the record reveals no basis to reverse in the interest of justice (*see* CPL 470.15 [6] [a]). A victim's prior acts of violence and reputation for assaultive behavior are, in some circumstances, admissible when a defendant asserts the defense of justification (*see People v Goetz*, 68 NY2d 96, 114; *People v Hagi*, 169 AD2d 203, 210, *lv denied* 78 NY2d 1011). Here, however, defendant admitted on cross-examination that he could have avoided the fatal altercation by, among other things, reporting Miller's alleged aggressive conduct toward him to prison personnel. His admission of an available avenue of retreat coupled with his decision to instead employ deadly physical force effectively eviscerated his justification defense (*see* Penal Law § 35.15 [2] [a]; *People v Russell*, 91 NY2d 280, 290; *People v Miller*, 217 AD2d 810, 811, *lv denied* 86 NY2d 798) and, concomitantly, rendered harmless any purported error during his direct examination regarding the admissibility of evidence pertaining to Miller's prior acts or reputation.

Although the prosecutor was improperly permitted to ask defendant on cross-examination a question regarding the truthfulness of the testimony of another witness (*see People v Daley*, 292 AD2d 630, 631, *lv denied* 98 NY2d 709; *People v McGlone*, 222 AD2d 529), review of the record reveals that this line of questioning was "not so pervasive or profound as to have rendered the trial unfair" (*People v Pierce*, 266 AD2d 721, 722, *lv denied* 94 NY2d 951; *see People v Daley, supra*; *People v McGlone, supra*).

Cardona, P.J., Crew III, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed.