Joyce **ROBINSON**, as Successor in interest and surviving heir to decedent, Vernon Miller, Plaintiff,

v.

**UNITED STATES BUREAU OF PRISONS; U.S. Bureau of Prisons' Raybrook Federal Correctional Facility; John Nash, Warden U.S. Bureau of Prisons' Raybrook Federal Correctional Facility; Daniel Mercado, as an individual and in his official capacity at the Raybrook Correctional Facility; and John Doe(s), unknown correctional officers, at U.S.B.P. Raybrook Correctional Facility, Defendants.**

No. 02–CV–0190.

United States District Court,
N.D. New York.

Feb. 7, 2003.

58

Smith, Hirsch, Blackshear & Harris, PLC, Attorney for Plaintiff, Nashville, TN, Fannie J. Harris, Esq.

Hon. Glenn T. Suddaby, United States Attorney for the Northern District of New York, Attorneys for Defendants, Albany, James C. Woods, Esq., Assistant U.S. Attorney, Of Counsel.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

Plaintiff Joyce Robinson commenced the instant action pursuant to 42 U.S.C. §§ 1983, 1985, 1988, the Federal Tort

Claims Act, 28 U.S.C. § 2674, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution arising out of the death of her son, Vernon Miller ("Miller"), while he was incarcerated at the Ray Brook Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"). Defendants now move to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiff opposes. The motion was taken on submit without oral argument.

## II. *FACTS*

At all times relevant hereto, Miller was in the custody of the United States Bureau of Prisons at the FCI Ray Brook. (Pl.'s Stmnt. of Mat. Facts at ¶ 1.) In the evening of May 30, 1999, he was playing chess with another inmate, Isa Gray ("Gray"), in the Genesee Housing Unit ("GHU"). (Def.'s Stmnt. of Mat. Facts at ¶ 2.) The chess game escalated into a physical altercation between Miller and Gray. (Pl.'s Stmnt. of Mat. Facts at ¶ 8; Def.'s Stmnt. of Mat. Facts at ¶ 4.) Gray ultimately stabbed Miller in the chest with a sharpened metal shank. (Def.'s Stmnt. of Mat. Facts at ¶ 4.[1]) Defendant Corrections Officer Daniel Mercado ("Mercado"), the only officer supervising the inmates in the unit, did not witness the fight. (Pl.'s Stmnt. of Mat. Facts at ¶¶ 7, 9.)

At 8:30 p.m., prison officials scheduled a facility-wide move whereby inmates were moved from one area within the prison to another. (*Id.* at ¶ 11.) During the move, Mercado was positioned in front of the GHU where he could observe the common area of the prison yard and open the door of the unit. (*Id.* at ¶¶ 12–13.) Miller ran out of the unit, stated that he had been stabbed, and that he thought he was going to die. (*Id.* at ¶ 14.) Mercado reached out for Miller and activated his body alarm. (Def.'s Stmnt. of Mat. Facts at ¶ 8.) Miller pulled away from Mercado and headed toward the Health Services Unit ("HSU"). (Pl.'s Stmnt. of Mat. Facts at ¶ 15.) While walking toward the HSU, Senior Officer Davis arrived and attempted to assist Miller to the HSU. (Def.'s Stmnt. of Mat. Facts at ¶ 9.; Pl's Mem. of Law, Ex. A at pp. 4–5.[2]) On the way to the HSU, Miller collapsed. (Pl.'s Stmnt. of Mat. Facts at ¶ 15.)

Shortly after Mercado radioed for assistance, FCI Ray Brook Emergency Medical Technician Steven Orman ("Orman") responded to the scene. (Pl.'s Ex. A, p. 14.; Def.'s Ex. 2; Def.'s Ex. 5.) Orman observed that Miller had lost a significant amount of blood (at least one liter) and continued to bleed heavily. (Def.'s Exs. 2, 5.) Prison officials requested an ambulance. (*Id.;* Pl.'s Ex. D.) Although the records submitted are difficult to discern, it appears that prison officials called for an ambulance shortly after Mercado learned of Miller's injury. (Pl.'s Ex. D; Def.'s Ex. 2.[3]) According to prison medical records,

---

1. As a result of this incident, Gray was convicted of manslaughter in the second degree, criminal possession of a weapon in the third degree and promoting prison contraband in the first degree. *See People v. Gray*, 300 A.D.2d 749, 751 N.Y.S.2d 652 (3d Dep't 2002).

2. The exhibits attached to plaintiff's Memorandum of Law will be referenced as "Pl.'s Ex." followed by the exhibit number. Simi-

larly, the exhibits attached to defendant's Memorandum of Law will be referenced as "Def.'s Ex." followed by the exhibit number.

3. Ambulance records provide that the ambulance was called between 8:20 and 8:30 p m. (Pl.'s Ex. D.) This is impossible because all parties agree that Mercado did not learn of Miller's injuries until 8:30 p.m. or shortly thereafter. (Pl.'s Stmnt. of Mat. Facts at ¶¶ 11, 13, 14.) Ambulance records further

Miller was alert and fully oriented when Orman arrived. (Def.'s Ex. 2, 5.) Orman proceeded to render first aid to Miller which consisted of applying direct pressure to the wound and providing oxygen and intravenous fluids. (Def.'s Ex. 2, 5; Pl.'s Ex. A, p. 14–15.) Orman's records provide that Miller's heart sounded

> clear and regular/rapid. Pt complained of being cold and was very restless. Pt moved to ambulance stretcher and removed from institution for hospital treatment. Pt. remained alert and lucid throughout the time and was being cared for by HSU staff.

(Def.'s Ex. 2.)

During the time Miller was receiving treatment, prison officials also were investigating the incident. Prison officials questioned Miller about who was responsible for the stabbing. (Pl.'s Stmnt. of Mat. Facts at ¶ 17; Pl.'s Ex. A, p. 9.) Miller allegedly responded that Gray did it. (Pl.'s Ex. A, p. 9.) Another officer displayed a picture of an inmate to Miller and asked whether the picture was of the perpetrator. (*Id.*) Miller responded that the inmate in the picture, Gray, stabbed him. (*Id.*)

The ambulance took Miller to the Adirondack Medical Center Emergency Room. According to hospital records, he arrived in the emergency room at 9:24 p.m. (Def.'s Ex. 2.) Miller died at 10:49 p.m. as he was being prepared for the operating room. (*Id.*) Miller's death certificate states that the immediate cause of

death was internal and external exsanguination (i.e., he bled to death).

Joyce Robinson was appointed by the Illinois state courts as the representative of her son's estate. The instant action was commenced on February 13, 2002.

### III. *STANDARD OF REVIEW*

Because defendants moved pursuant to Fed.R.Civ.P. 56, plaintiff is on notice that defendants seek summary judgment. Plaintiff and defendants submitted materials outside the pleadings. Further, plaintiff does not claim that she has not had sufficient opportunity to develop the facts necessary to oppose defendants' motion for summary judgment. *See* Fed.R.Civ.P. 56(f); *Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 422 (2d Cir.1989) (party seeking additional discovery prior to disposition of summary judgment motion must file affidavit with district court stating (i) what facts are sought; (ii) how they create genuine issue; (iii) what effort has been made to obtain them; and (iv) why efforts have been unsuccessful). Accordingly, the instant motion will be treated as one made pursuant to Rule 56.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate

---

provide that the ambulance left for FCI Ray Brook at 8:36 p.m., arrived at FCI Ray Brook at approximately 8:42 p.m., left for the hospital at approximately 9:00 p.m., and arrived at the hospital at approximately 9:10 p.m. (Pl.'s. Ex. D; Def.'s Ex. 2.) The New York State Police's interview of Lieutenant Robert Charles Thompson at FCI Ray Brook indicates that the ambulance arrived somewhere between 8:50 and 8:55 p.m. (Pl.'s Ex. A, p.

11.) Hospital records indicate that Miller was admitted to the emergency room at approximately 9:24 p.m.; not 9:10 as indicated in the ambulance records. (Def.Ex. 2.) It, thus, appears, although it is uncertain and cannot now be resolved, that the times recorded in the ambulance records are approximately ten to fifteen minutes behind all other times recorded in medical records or testified to by witnesses.

inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## IV. DISCUSSION

### A. Eighth Amendment Claims

#### 1. Proper Basis for Claims

 Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983. Section 1983 does not provide a cause of action against federal agencies or employees. Accordingly, plaintiff's claims will be treated as ones brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994); *Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.) (per curiam) (construing pro se section 1983 claims against federal defendants as *Bivens* claims), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988).

### 2. Qualified Immunity

The individual defendants first contend that plaintiff's constitutional claims should be dismissed because they are entitled to qualified immunity.

> [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations and quotation marks omitted).

> Defendants are entitled to qualified immunity if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that [his] conduct was unlawful. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.

*Anderson v. Recore,* 317 F.3d 194 (2d Cir. 2003) (internal citations, quotations and alterations omitted).

### a. Did Defendants' Actions Violate A Clearly Established Right

It is plaintiff's position that: (1) prison officials failed to provide Miller with proper medical treatment; and (2) "allowing 219 inmates, who have violent proclivities, to move about between two separate, but connected, housing units, freely and unguarded or inadequately guarded posed a substantial risk to [Miller]". (Pl. Mem. of Law at 8.)

### (1) Inadequate Medical Treatment Claim

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). This standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted with a sufficiently culpable state of mind. *See id.*; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). *Smith v. Carpenter*, 316 F.3d 178, 180 (2d Cir.2003). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Id.* "[A] prisoner must demonstrate more than 'an inadvertent failure to provide adequate medical care' by prison officials to successfully establish Eighth Amendment liability." *Id.* "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of recklessness as used in criminal law." *Id.* (internal quotations and citations omitted).

Defendants concede that Miller suffered from a serious medical condition. They contend, however, that they were not deliberately indifferent to his medical needs. The undisputed evidence in the record reveals that upon learning of Miller's injury, Mercado immediately radioed for assistance. Mercado attempted to assist Miller, but Miller pulled away and headed toward the HSU. At that time, another corrections officer, Senior Officer Davis, arrived to assist Miller to the HSU. Mercado left to assist in securing the other inmates. The other corrections officer attempted to assist Miller to the HSU when Miller collapsed to the floor. An Emergency Medical Technician ("EMT") arrived and began to perform first aid. An ambulance also was summoned to take Miller to the emergency room. The EMT, together with the assistance of other corrections officers, continued to provide medical assistance to Miller until the ambulance arrived. Plaintiff offers no evidence that Mercado delayed treatment, delayed the departure of the ambulance for the hospital, or otherwise disregarded Miller's serious medical condition. Because Mercado immediately summoned help for Miller, and such help, including an EMT and other corrections officers, arrived quickly and began performing first aid on Miller, it cannot be said that Mercado acted with deliberate indifference to Miller's serious medical condition. *See Mays v. Rhodes*, 255 F.3d 644, 649 (8th Cir.2001). Even assuming that Mercado's actions did amount to a constitutional violation, they were objectively reasonable under the circumstances presented. Accordingly, plaintiff has failed to establish a constitutional violation, and in any event, Mercado is entitled to qualified immunity.

The same reasoning applies with respect to defendant John Nash. First, there was no Eighth Amendment violation.

Second, prison officials acted reasonably under the circumstances. Third, Nash was neither the warden of FCI Ray Brook nor present at the facility on May 30, 1999, and therefore, had no personal involvement in the incident.[4] *See, e.g., Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir.2001) (personal involvement is a prerequisite for an award of damages for an alleged constitutional deprivation).

### (2) *Inadequate Supervision of Inmates Claim*

The Eighth Amendment imposes a duty upon prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). To succeed on the inadequate supervision of inmates claim, plaintiff must demonstrate that defendants acted with deliberate indifference towards Miller's safety. *See Rangolan v. County of Nassau*, 217 F.3d 77, 79 (2d Cir.2000). Thus, plaintiff has the burden of demonstrating that defendants knew of and disregarded an excessive risk to Miller's safety. *Id.*

■ There is no evidence—expert or otherwise—in the record suggesting that defendants should have been aware of an excessive risk to Miller's safety or that the staffing at FCI Ray Brook rises to the level of a constitutional violation. *See Tucker v. Evans*, 276 F.3d 999, 1002–03 (8th Cir.2002). The mere allegation that having one corrections officer supervise 219 inmates with violent proclivities, without more, is an insufficient basis upon which a fair minded trier of fact could reasonably conclude that defendants were aware of an excessive risk to Miller's safety or the FCI Ray Brook prison population

in general. *See id; compare Smith v. Ark. Dep't of Correction*, 103 F.3d 637, 644 (8th Cir.1996). It, therefore, cannot be said that defendants were aware of and disregarded any such risks. Further, there is no evidence—expert or otherwise—that any alleged failure to supervise was a proximate cause of the attack and the resulting injuries and death. Accordingly, this claim must be dismissed.

### B. *Federal Tort Claims Act*

■ Plaintiff also seeks to hold defendants liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et. seq.* The FTCA waives the United States' sovereign immunity for

> claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Under the FTCA, courts apply the law of the state where the accident occurred. *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir.2000). Here, New York law applies.

■ Under New York law, the elements of a negligence claim are:(i) a duty owed to the plaintiff by the defendant; (ii) a breach of that duty; and (iii) injury substantially caused by that breach. *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir.2002). Because defendants incarcerated Miller and held him

---

4. The undisputed evidence in the record is that Nash did not become warden at FCI Ray Brook until August 1999.

against his will, they owed him a duty of care. 18 U.S.C. § 4042; *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *see also Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Sanchez v. State of New York,* 99 N.Y.2d 247, 754 N.Y.S.2d 621, 784 N.E.2d 675 (2002). Plaintiff offers no evidence, however, that defendants breached that duty of care or that, assuming they did breach their duty of care, Miller's injuries and resulting death were substantially caused by that breach. *See Sanchez,* 99 N.Y.2d at 247, 754 N.Y.S.2d 621, 784 N.E.2d 675.

██ Again, plaintiff proffers no evidence—expert or otherwise—or law from which a fair minded trier of fact could reasonably conclude that it is a departure from the ordinary standard of care to have one corrections officer supervise 219 inmates. *See id.* In *Sanchez,* the New York Court of Appeals found issues of triable fact regarding the foreseeability of inmate-on-inmate violence based upon evidence including staffing levels, the ability of staff to monitor the inmates, past behavior of inmates and prison staff, state regulations regarding the staffing of correctional facilities and the monitoring of inmates, and expert testimony regarding the staffing levels at issue. In this case, there is no evidence or expert testimony about rules and regulations relevant to the foreseeability of such violence (*e.g.* rules and regulations regarding proper staffing levels, proper positioning of corrections officers, proper monitoring procedures, etc.), the risk of inmate-on-inmate attacks during periods of open movement in and out of the housing unit, the corrections officers' past behavior with respect to monitoring inmate activity, or the corrections officers' ability to monitor the inmates from their assigned posts. *See id.* As the New York State Court of Appeals stated in *Sanchez,* "[t]he mere occurrence of an inmate assault, without credible evidence that the assault was reasonably foreseeable, cannot establish the negligence of the State." *Id.* Even assuming there was a breach of the duty of care, plaintiff also fails to present evidence—expert or otherwise—that Miller's stab wound was the result of any such breach.

██ Similarly, plaintiff presents no evidence—expert or otherwise—that defendants deviated from the proper standard of care in rendering medical treatment to Miller. The evidence in the record demonstrates that defendants promptly attended to Miller's medical needs by applying pressure to the wound, giving him an IV and oxygen, and summoning an ambulance. He was awake and alert when he left FCI Ray Brook and upon arrival at the emergency room. He then went into cardiac arrest upon being transferred from the emergency room to the operating room. He died at 10:48 p.m. (approximately two hours and twenty minutes after he was stabbed) after efforts to resuscitate him failed. (Def. Ex. 2; Pl. Exs. H, I.) Other than questioning defendants' efforts, plaintiff provides no evidence—expert or otherwise—from which the trier of fact could reasonably conclude that such efforts constituted a breach of the applicable standard of care.

## C. *Liability of the United States*

██ The United States, the real party in interest when a federal agency is named as a defendant, cannot be held liable for plaintiff's causes of action because: (1) constitutional claims are not actionable under the FTCA, *Washington v. Drug Enforcement Administration,* 183 F.3d 868,

873 (8th Cir.1999); *Broady v. City of New York,* No. 01 Civ. 0724, 2001 WL 720582, at * 1 (S.D.N.Y. June 26, 2001); (2) a *Bivens* action may not be maintained against the United States, *Washington,* 183 F.3d at 872 n. 8; and (3) for the reasons previously discussed, plaintiff has failed to demonstrate any constitutional violations or negligence.

## V. CONCLUSION

Plaintiff has failed to demonstrate that defendants' actions violated Miller's constitutional rights under the Eighth Amendment. Defendants did not act with deliberate indifference towards Miller's safety or serious medical condition. Plaintiff has failed to proffer any evidence from which a fair minded trier of fact could reasonably conclude that defendants breached their duty of care to Miller by failing to provide adequate supervision of inmates or failing to provide him with proper medical care. Alternatively, there is no evidence that any alleged breach of the duty of care was the proximate cause of Miller's injuries and resulting death. Plaintiff has failed to identify the "John Doe" defendants or any other individuals against whom liability may be imposed under the Eighth Amendment or the FTCA. Finally, Mercado is entitled to qualified immunity and Nash to dismissal for lack of any personal involvement.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. The complaint is DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.