**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

READY TRANSPORTATION,
INCORPORATED,
                    *Plaintiff-Appellant,*

              v.

MILITARY TRAFFIC MANAGEMENT
COMMAND; KENNETH PRIVRATSKY,
Major General, Commanding
General of Military Traffic
Management Command; WILLIAM S.
COHEN, Secretary of Defense;
SHIRLEY HANSON; PATTY MALONEY;
DOES 1-5,
                    *Defendants-Appellees,*

              and

DOES 1 THROUGH 50,
                    *Defendants.*

———————————————

UNITED STATES OF AMERICA,
                    *Movant.*

No. 02-2075

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-02-601-A)

Argued: October 30, 2003

Decided: January 22, 2004

Before LUTTIG, WILLIAMS, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Timothy Charles Riley, LAW OFFICE OF TIMOTHY C. RILEY, Pasadena, California, for Appellant. Steven E. Gordon, Assistant United States Attorney, Alexandria, Virginia, for Appellees. **ON BRIEF:** Jay Donald Majors, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, Washington, D.C., for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Ready Transportation, Incorporated ("RTI") appeals from the district court's order dismissing its claims against the Military Traffic Management Command ("MTMC") and MTMC officials Patty Maloney and Shirley Hanson. RTI's complaint, filed in the Eastern District of Virginia on May 30, 2002, alleges tort claims stemming from MTMC's temporary debarment of RTI from eligibility to transport freight for the Department of Defense (the "DOD").[1] For the reasons explained below, we affirm.

[1]RTI's complaint alleges claims pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

I.

RTI is an over-the-road commercial motor carrier that transports goods in interstate commerce.[2] In 1993, RTI obtained the approval of MTMC, the Army subcommand responsible for coordinating the DOD's freight transportation, to compete for hauling contracts. To be eligible to haul freight for the DOD, MTMC required RTI to execute and comply with a hazardous materials transportation agreement (the "HAZMAT Agreement").

The HAZMAT Agreement, executed on September 19, 1996, required that RTI obtain and maintain a satisfactory safety rating with the Department of Transportation (the "DOT").[3] HAZMAT Agreement ¶ 7.a. Incorporating MTMC Regulation 15-1, the HAZMAT Agreement also authorized MTMC to immediately revoke RTI's eligibility to bid on DOD hauling contracts if RTI failed to obtain and maintain a satisfactory safety rating. *Id.* at ¶ 1. Furthermore, the HAZMAT Agreement empowered MTMC to debar RTI by placing it on "nonuse" status for unsatisfactory performance or for violating the terms of the agreement.[4] *Id.* at ¶ 15.

---

[2]Because we are reviewing the dismissal of claims under Federal Rule of Civil Procedure 12(b)(6), our factual recitation is presented in the light most favorable to the nonmoving party (i.e., RTI). *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

[3]Paragraph 7.a. of the HAZMAT Agreement provides that "[s]afety ratings which are '*unsatisfactory*,' '*unconditional*,' '*insufficient information*,' or '*not rated*' will not be accepted." This list includes all safety ratings other than a rating of "satisfactory." A satisfactory safety rating under DOT regulations "is based on the degree of compliance with the safety fitness standard for motor carriers." 49 C.F.R. § 385.5. To meet this standard, the motor carrier must demonstrate that it has adequate safety management controls in place that ensure compliance with applicable safety requirements to reduce the risk associated with, among other things, the transportation of hazardous materials; commercial driver's license standard violations; and the inadequate inspection, repair, and maintenance of vehicles. *Id.* (providing safety fitness standard); *see also id.* § 385.7 (factors considered in determining safety rating).

[4]Under the HAZMAT Agreement, RTI acknowledged "the Government's right to revoke approval, declare ineligible, *nonuse*, or disqualify

When RTI entered into the HAZMAT Agreement in 1996, it had not acquired a safety rating from the DOT. Nevertheless, for the next four years RTI regularly hauled freight, including hazardous materials, for the DOD. In March, 2000, one of RTI's competitors notified MTMC that RTI did not have a satisfactory DOT safety rating, and the competitor asserted that RTI should be disqualified from bidding on DOD hauling contracts. As a result, MTMC confirmed that RTI, as well as seventeen other carriers that the DOD utilized to haul its freight, had been operating without the required DOT safety rating. MTMC then retained a private safety inspector, Consolidated Safety Services, Inc. ("Consolidated"), to perform inspections on eight of the unrated carriers, including RTI. The inspections were carried out by Consolidated, and RTI failed to secure a satisfactory safety rating.

MTMC officials Patty Maloney and Shirley Hanson coordinated with Consolidated in conducting these inspections. RTI alleges that Maloney and Hanson deliberately failed to notify RTI that it did not receive a satisfactory safety rating from Consolidated, and that their failure to promptly notify it of the results of the inspection precluded it from remedying its safety deficiencies prior to being placed on non-use status.[5]

the carrier [RTI] for . . . *noncompliance with the terms of this Agreement* . . . ." HAZMAT Agreement ¶ 15 (emphasis added). MTMC defines non-use as:

> the act of excluding a carrier from participating in the DOD freight, personal property, or passenger transportation programs for reasons such as . . . operational or administrative deficiencies or violations pertaining to requirements necessary to participate in DOD transportation programs[,] . . . as opposed to specific incidences of unsatisfactory performance. The period of nonuse will last until the carrier furnishes evidence that the conditions causing the nonuse status have been remedied or removed.

MTMC Reg. 15-1.3.c. "Any nonuse status shall be effective immediately." *Id.* at 15-1.6.b.

[5]Pursuant to the DOT regulations pertaining to inspections, freight carriers that fail an inspection but which nonetheless satisfy certain criteria are accorded a reasonable time to remedy identified safety deficiencies

On September 22, 2000, James Gilmore, the Chief of MTMC's Carrier Service Division, notified RTI that it was being placed on nonuse status until it could satisfy the HAZMAT Agreement by securing a satisfactory DOT safety rating. Although analogous in many ways to a DOT safety inspection, MTMC would not accept the inspection conducted by Consolidated as a substitute for a DOT inspection. RTI remained on nonuse status for almost two months, until November 14, 2000, when it acquired a satisfactory DOT safety rating. RTI alleges that, because it was ineligible to haul freight for the DOD during this period, it suffered losses totalling $490,809.

In 2000, RTI commenced this civil action against, among others, MTMC, Maloney, and Hanson.[6] RTI alleges that its temporary debarment deprived it of various property interests guaranteed by law. Specifically, in RTI's FTCA claim against MTMC, it asserts that MTMC interfered with its property interests by failing to provide it with notice and an opportunity to remedy identified or perceived safety deficiencies prior to its debarment. *See* 28 U.S.C. §§ 1346(b), 2671-80 (creating waiver of sovereign immunity for actions alleging tor-

---

before being stripped of their eligibility to transport freight. 49 C.F.R. §§ 385.11, 385.13, 385.17. The safety inspection at issue in this case was not a DOT inspection and, at the time of the Consolidated inspection, the HAZMAT Agreement governed MTMC's contractual obligations to RTI. Thus, the DOT regulations concerning notice and an opportunity to remedy deficiencies prior to debarment are inapplicable here.

[6]On October 12, 2000, RTI filed an application for a Temporary Restraining Order ("TRO") in the Central District of California, seeking to be removed from nonuse status. The next day RTI filed a complaint in that court, alleging, *inter alia*, that various unnamed government employees had violated RTI's constitutional rights. By order dated October 17, 2000, the court denied RTI's request for a TRO. Thereafter, on October 25, 2000, the parties stipulated to a transfer of venue to the Eastern District of California.

On September 13, 2001, RTI filed an FTCA administrative claim with the DOD. The next month, on October 19, 2001, RTI amended its complaint in the Eastern District of California to include its FTCA allegations. By order of April 29, 2002, that court transferred the matter to the Eastern District of Virginia. The DOD denied the FTCA claim on May 8, 2002, and on May 30, 2002, RTI filed a second amended complaint.

tious conduct). In the alternative, RTI invokes the *Bivens* doctrine, alleging that Maloney and Hanson intentionally denied RTI its procedural due process rights under the Fifth Amendment. *See Bivens*, 403 U.S. 388 (recognizing cause of action against federal officials for violation of constitutional rights).

On July 2, 2002, MTMC, Maloney, and Hanson filed a joint motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court conducted a hearing on August 16, 2002, and, in ruling from the bench, explained that RTI's claims were not cognizable under either the FTCA or *Bivens*. An order dismissing the Complaint was issued later that day. RTI has filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo the dismissal of a complaint for failure to state a claim upon which relief can be granted. *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). A motion to dismiss, made pursuant to Rule 12(b)(6), "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.*

## III.

## A.

We first assess whether the district court erred in dismissing RTI's FTCA claim. As a general proposition, the United States may not be sued without its consent, and its consent must be unequivocally manifested in the plain language of a statute. *Lane v. Pena*, 518 U.S. 187, 192 (1996). It follows that, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34, 37 (1992)). Pursuant to the FTCA, "[t]he United States shall be liable,

. . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Section 1346(b) of Title 28 vests jurisdiction over FTCA claims in the district courts, but only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with *the law of the place where the act or omission occurred.*" *Id.* § 1346(b) (emphasis added).

RTI's FTCA claim alleges that it was deprived of property interests in violation of the procedural due process guarantees of the Fifth Amendment. The district court, ruling that the FTCA does not provide a remedy for constitutional torts, dismissed the FTCA claim. In these circumstances, we agree. Although we have recognized that sovereign immunity may be waived, we have accepted the general proposition that "because the 'law of the place' encompasses state law, but not federal law, a federal constitutional tort cannot provide the source of law under the FTCA." *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("Indeed, we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State — the source of substantive liability under the FTCA.")).

In other words, as made explicit by its text, the FTCA's limited waiver of sovereign immunity extends no farther than the limits of private tort liability. 28 U.S.C. § 2674. Because the basis for such liability must be the law of the state in which the act or omission occurred, a claim based exclusively on federal law may not be invoked under the Act. *See Washington v. Drug Enforcement Admin.*, 183 F.3d 868 (8th Cir. 1999) (holding Fourth, Fifth, and Fourteenth Amendment violations stemming from DEA search cannot be remedied through FTCA because state law cannot create liability for violation of federal constitutional rights). Because there is no waiver of immunity for claims of federal constitutional violations by federal officials under the FTCA, RTI's assertion of a Fifth Amendment violation is not cognizable under the FTCA and was properly dismissed.

Our analysis of the FTCA, however, does not end with our consideration of RTI's alleged constitutional assertions. In dismissing RTI's FTCA claim, the district court also recognized that, even if it construed the claim as asserting the common law tort theories of "inter-

ference, negligent interference, or interference with prospective contractual relations," RTI's tort claim would nonetheless be barred by § 2680(h) of the FTCA. Section 2680(h) specifically forecloses claims brought under the FTCA "arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h); *see also Selland v. United States*, 966 F.2d 346, 347 (8th Cir. 1992) ("A claim for interference with contractual relations is not within the scope of the FTCA."). Thus, as the district court properly recognized, even if we assume that RTI has alleged a claim for tortious interference with its contractual relationships, that claim was properly dismissed.

B.

We next turn to RTI's contention that the district court erred in dismissing its *Bivens* claim against Maloney and Hanson. In so ruling, the court concluded that a due process claim was not properly alleged because the HAZMAT Agreement did not mandate that RTI be given notice and an opportunity to remedy safety deficiencies prior to being placed on nonuse status. Moreover, the court held that RTI was precluded from utilizing a *Bivens* remedy because Congress had provided alternative statutory remedies for its alleged due process claim. Lastly, the court determined that Maloney and Hanson were entitled to qualified immunity. On appeal, RTI takes issue with each of the court's conclusions.

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Supreme Court has held that a cause of action and a damages remedy can be implied under the Constitution when the Due Process Clause is contravened. *Davis v. Passman*, 442 U.S. 228 (1979) (extending *Bivens* to provide remedy for alleged violation of equal protection because of gender discrimination by Congressman in terminating petitioner's employment). As explained below, we agree with the district court that a due process violation has not been alleged here.

The HAZMAT Agreement, which required that RTI obtain and maintain a satisfactory safety rating with the DOT as a prerequisite to transporting freight for the DOD, forecloses RTI's *Bivens* claim. Because RTI failed to obtain a satisfactory safety rating from the

DOT, MTMC was authorized under the HAZMAT Agreement to revoke RTI's eligibility to bid on DOD hauling contracts and to immediately place RTI on nonuse status. First, RTI was placed on nonuse status for its failure to have a satisfactory DOT safety rating — not because it failed the Consolidated inspection. Second, the HAZMAT Agreement, which RTI bargained for and entered into, did not obligate MTMC to notify RTI of safety deficiencies following a non-DOT inspection, such as the one conducted by Consolidated. Finally, the HAZMAT Agreement did not accord RTI the opportunity to remedy safety deficiencies prior to being placed on nonuse status. Instead, it required RTI to obtain a satisfactory safety rating in order to be eligible to transport freight for the DOD, and it provided the remedy for failure to acquire such a rating (i.e., immediately being placed on nonuse status). Accordingly, Maloney and Hanson could not have denied RTI its right to notice, or its right to be accorded an opportunity to remedy safety deficiencies, prior to being placed on nonuse status. RTI simply did not enjoy any such rights under the HAZMAT Agreement. Consequently, RTI's *Bivens* claim was appropriately dismissed.[7]

## IV.

Pursuant to the foregoing, we affirm the ruling of the district court.

*AFFIRMED*

---

[7]Because a *Bivens* remedy is not available to RTI, we need not reach the issues of whether, in these circumstances, a *Bivens* remedy is precluded by the availability of alternative remedies or whether Maloney and Hanson are entitled to qualified immunity.