COLLOTON, Circuit Judge.
Jose Luis Gonzalez filed suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, alleging that employees of the United States negligently caused significant delay in the proper treatment of leg injuries that he suffered while an inmate at the Federal Correctional Institution in Forrest City, Arkansas. After a two-day bench trial, the district court[1] found the government liable and awarded compensatory damages of $813,000. On appeal, the government argues that the amount of damages is excessive. Under the deferential standard of review that applies to an award of damages in a bench trial, we affirm.
I.
On July 28, 2004, Gonzalez suffered an injury to his left leg and ankle in a prison-sanctioned softball game when another player slid into second base and struck Gonzalez. The next morning, Gonzalez self-reported to the prison’s Health Services Department for medical treatment of his ankle and leg. Nurse G. Toliver told Gonzalez that “walk-ins” were not allowed and instructed him to return the next day. When Gonzalez returned on the morning of July 30, Nurse Toliver told him that he could not be treated and that he must make an appointment for August 2, 2004.
Gonzalez returned to the Health Services Department on August 3, 2004, and Physician’s Assistant Yvette Toro examined him. According to Toro’s notes, Gonzalez complained of pain in his left ankle “due to [a] sports injury” and assessed his pain level at a “6,” noting that the pain is “worse at night.” Toro requested x-rays of Gonzalez’s left knee and ankle and gave him Motrin or Ibuprofen. Gonzalez requested crutches or a wheelchair, but the department did not provide them. Gonzalez also saw Dr. J. Edna Prince, the department’s Clinical Director. While Gonzalez and Dr. Prince offered differing accounts of this meeting, Dr. Prince did not give Gonzalez a wheelchair or crutches or additional pain medication.
On August 17, 2004, Gonzalez returned to the Health Services Department for x-rays. A technician, however, attempted to perform an x-ray of Gonzalez’s chest, because Toro’s treatment order mistook Gonzalez for a similarly-named former inmate with a malady of the chest. Upon discovering the error, the technician told Gonzalez that he would have to reschedule the x-ray of his leg.
On August 26, 2004, the Health Services Department performed an x-ray of Gonzalez’s leg, which revealed fractures of his fibula and ankle. After discovering the seriousness of Gonzalez’s injury, Dr. Prince sent him to a local hospital where *951 he was fitted with a supportive walking boot.
The next morning, Dr. Prince ordered Gonzalez to a hospital in Memphis, Tennessee, where a doctor performed surgery-on Gonzalez’s left leg and ankle. The operation — an “open reduction and internal fixation of medial malleolar fracture with closed treatment of proximal fibular fracture” — required the placement of two screws in Gonzalez’s left ankle. With his ankle in a cast, Gonzalez returned to the prison that night. Upon his return, prison officials placed Gonzalez in a Special Holding Unit. Gonzalez referred to this unit as the “hole” or “punishment cell,” and claimed that he suffered serious pain without adequate medical care. Dr. Prince, however, stated that the SHU was the appropriate place for Gonzalez until he was mobile.
After three to four weeks in a cast, and another four in a walking boot, Gonzalez was able to place weight on his ankle. The Bureau of Prisons later transferred Gonzalez to another institution and released him from custody on November 14, 2008. Gonzalez was then repatriated to Mexico.
Gonzalez filed suit under the Federal Tort Claims Act, alleging that the Health Services Department and its staff breached duties of care owed to Gonzalez by refusing medical treatment and causing unreasonable delay in the diagnosis and repair of his injury. Gonzalez alleged that the delay in treatment caused him “undue and unnecessary pain and suffering.” He demanded $8,000,000 in compensatory damages. The demand for damages sought “at least $10,000 per day” for pain experienced from July 28 through August 8, 2004, and “at least $5,000 per day” for pain suffered from August 3 through August 26, 2004. For August 27 through August 30, 2004, the period immediately after surgery, Gonzalez demanded $20,000 per day. He sought $2000 per month for the rest of his lifetime, due to permanent disability and arthritic pain. Gonzalez also demanded $2,170,000 to compensate for “mental anguish” suffered between August 2, 2004, and the trial in 2010, a larger proportion of which presumably occurred during the span in August 2004 when Gonzalez was denied treatment and “despaired of ever being treated.” Pl.’s Demand for Damages under the Federal Tort Claims Act, at 6.
At a bench trial, the district court heard testimony from Gonzalez’s expert witness, Dr. James Keever, a licensed orthopedic surgeon. Dr. Keever gave his opinion, based on a reasonable medical probability, that Gonzalez has developed permanent post-traumatic arthritis of the ankle. According to Dr. Keever, this condition was caused by the delay in treatment and will worsen with time.
The district court found that the government breached its duty of care by failing to treat Gonzalez’s ankle in the four weeks prior to the taking of x-rays.[2] The court, relying on Dr. Keever’s testimony, also found that Gonzalez “suffered a continuing injury following his surgery on August 27, 2004 that was proximately caused by the [government’s] gross negligence.” Regarding Gonzalez’s pain and suffering, the district court observed:
*952 [Gonzalez] states that he experiences pain on a constant basis and that his left ankle will not support his normal day-today activities. He states he can’t perform his work as a mechanic or a contractor because both jobs require prolonged standing, which he is unable to do. [Gonzalez] states that he walks in pain and sleeps in pain, that he can no longer participate in athletics, and that the left ankle doesn’t have the same mobility as the right ankle. For example, [Gonzalez] states that when he stumbles he is unable to recover since the ankle doesn’t respond with the same reflexes as his other ankle and he thus falls down, and he states that while he can go up a ladder the problem is going down as the left foot doesn’t support his body weight. [Gonzalez] states the ankle is swollen and that he has to keep moving his foot forwards and backwards so that something will release from the pain. He states he can’t walk that much and that he cannot carry anything due to the pain, and that when he kneels down he struggles to get up because of the ankle.
The district court awarded Gonzalez $813,000 in compensatory damages. The award consisted of $285,000 for Gonzalez’s pain and suffering and mental anguish suffered from the morning of July 29, 2004 until x-rays were taken on August 26, 2004, and $528,000 for the “pain and suffering and mental anguish reasonably certain to be experienced” for the remainder of Gonzalez’s expected life, which the court determined to be 22 years.
II.
The government’s sole argument on appeal is that the amount of damages is excessive. The appeal does not challenge the sufficiency of the evidence to support the district court’s finding of proximate causation, and the government does not dispute the procedural adequacy of the district court’s findings of fact on liability or damages. We are asked only to set aside the district court’s chosen award of $813,000.
This court has recognized that while “the amount of damages entered in a non-jury case is a finding of fact and therefore subject to the ‘clearly erroneous’ standard of review set forth in Fed.R.Civ.P. 52(a), any application of that general standard must take account of the special circumstances in which that kind of factual finding is rendered.” Overton v. United States, 619 F.2d 1299, 1304 (8th Cir.1980). This court has “long subscribed to the view” that excessiveness of an award
is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is “plain injustice” or a “monstrous” or “shocking” result.
Id. (quoting Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447-48 (8th Cir.1961)). This has been the law for decades, yet neither Congress nor the State of Arkansas has seen fit to establish guidelines or limits on awards for pain and suffering in this context.
The “special circumstances” and “obvious reasons” counseling in favor of this deferential review include the fact that “[t]here is no precise or exact measuring stick for calculating general damages for pain and suffering.” Taken Alive v. Litzau, 551 F.2d 196, 198 (8th Cir.1977). *953 “[A]wards for pain and suffering are highly subjective,” Morrissey v. Welsh Co., 821 F.2d 1294, 1301 (8th Cir.1987), and “[depending upon the fact situation, the range between an inadequate award for pain and suffering and an excessive award can be enormous.” Id. Only if an award is so extreme as to fall outside this “enormous” range of discretion should appellate judges substitute their “highly subjective” valuation of pain and suffering for the district judge’s conclusion. And there is no special standard of review for cases involving public funds. The government is treated the same as any other tortfeasor.
The award of $813,000 in this case is generous, but we cannot conclude that the decision of the experienced district judge was “monstrous” or “shocking” or that it resulted in a “plain injustice.” The government’s appeal is based almost entirely on an effort to compare the award in this case with awards in other published decisions. We have observed that “comparisons to other jury verdicts are often not particularly helpful in claims involving noneconomic damages,” and that a district court may even abuse its discretion by relying on such comparisons where the facts of the instant case “are not easily comparable to the facts of other cases.” McCabe v. Parker, 608 F.3d 1068, 1080 (8th Cir.2010) (internal quotations omitted). The facts of this case are unusual and distinguishable from the cases cited by the government. The proffered authorities do not provide us with an adequate foundation to conclude that the district court’s award is so outside the mainstream that we should substitute our subjective evaluation of pain and suffering for the district court’s assessment.
The judgment of the district court is affirmed.

. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

. Prior to trial, the government admitted that it breached the applicable standard of care by failing to obtain an x-ray of Gonzalez’s ankle between August 3, 2004 and August 26, 2004. The district court, however, found that the breach began on the morning of July 29, 2004, when Gonzalez first reported to the Health Services Department, and ended on the afternoon of August 26, 2004, when x-rays were taken. The court found that Gonzalez failed to prove that the government breached the standard of care during his post-surgery care.