# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3156

_____

Jeffrey R. Lockhart

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: June 16, 2016
Filed: August 25, 2016

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A federal employee injured Jeffrey R. Lockhart in a car accident. Lockhart later required shoulder surgery. He sued under the Federal Tort Claims Act (FTCA). The district court,[1] in a bench trial, found the government 100% at fault for the

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

collision, but only 20% liable for Lockhart's injury. He appeals the damages award. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In March 2011, Lockhart was driving his truck south on a rural Missouri road. A park ranger for the United States Army Corps of Engineers was driving north. The ranger took his eyes off the road to adjust his radio. His side mirror collided with Lockhart's mirror. Lockhart sustained minor glass cuts and felt some left-shoulder pain. Both drivers drove away from the collision. Because the ranger was within the scope and course of his employment, the United States stipulated to liability for his acts under the FTCA.

After the collision, Lockhart saw his primary care physician, Dr. Leonard W. Bridges. Imaging of Lockhart's left shoulder showed both degenerative conditions and traumatic injury. Before the collision, Lockhart had not complained to Dr. Bridges about, or been treated for, left-shoulder pain. Dr. Bridges referred Lockhart to a specialist.

An orthopedic surgeon, Dr. William T. Wester, examined Lockhart's shoulder and reviewed the images. Dr. Wester noted that the images showed the left shoulder had signs of degenerative arthritis, specifically glenohumeral arthritis, AC joint arthritis, and some degenerative arthritis in the rotator cuff. According to the district court, "Dr. Wester testified that imaging of the shoulder indicated advanced degeneration that would have had to develop over time . . . such that the degenerative condition is not attributable to the Collision itself. . . . He further opined that but for the Collision, the arthritis may not have advanced to the point that shoulder replacement would be necessary." After non-surgical treatment failed, Dr. Wester performed total left-shoulder replacement surgery. Lockhart then completed physical therapy. He returned to Dr. Bridges for treatment and pain management, and Dr. Bridges assisted him in applying for Social Security disability benefits. The Social Security Administration found Lockhart disabled as of the day after the collision.

Lockhart sued under the FTCA.  Before trial, the United States retained Dr. Thomas B. Corsolini as a medical expert.  He examined Lockhart and prepared an expert report, admitted at trial.  Dr. Corsolini testified that the collision was—at most—responsible for 20% of Lockhart's "need for the later left shoulder surgery" "citing the advanced arthritic changes that were found."  He stated "there is no way it [the collision] would cause all of the abnormalities that were found on diagnostic testing" and "pointed out that those findings would have required years to develop." Dr. Corsolini further testified that "the need for the left shoulder joint replacement would have arisen and been necessary due to degenerative changes at the left shoulder whether or not Mr. Lockhart had been in the accident."  However, Dr. Corsolini did say that the collision "could have contributed a portion toward the need for the surgery."

The district court found the United States 100% at fault for the collision.  It also found that the medical opinions supported Lockhart's claim that the collision contributed to his left-shoulder issues and that Lockhart's injury was a reasonably foreseeable consequence of the collision.  Although finding the United States at fault, the court concluded that the collision resulted in, at most, 20% of "Lockhart's need for the shoulder replacement."  Multiplying Lockhart's total medical expenses of $53,968.42 by 20%, the court awarded $10,793.68 in compensatory medical damages. The court also awarded $10,000 for pain and suffering, and $22,000 for lost income. Lockhart appeals, seeking all his medical expenses and an increased award for pain and suffering.

The FTCA gives district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

***Sheridan v. United States***, 487 U.S. 392, 398 (1988), *quoting* **28 U.S.C. § 1346(b)(1)**. Because the collision occurred in Missouri, Missouri substantive law applies. *See id.* Under the FTCA, "Damages are determined according to the relevant state law." ***Wilkinson v. United States***, 564 F.3d 927, 934 (8th Cir. 2009). *See also* ***Limone v. United States***, 579 F.3d 79, 103 (1st Cir. 2009) ("We approach the awards at issue here mindful that, in an FTCA case, both the nature of allowable damages and the measure of those damages are drawn from state law. . . . Under Massachusetts law, the proper measure of damages is, within wide limits, committed to the sound discretion of the trier of fact.").

This court reviews the district court's findings of fact for clear error, and its conclusions of law de novo. ***Washington v. Drug Enforcement Admin***., 183 F.3d 868, 872 (8th Cir. 1999). "This court has recognized that while 'the amount of damages entered in a non-jury case is a finding of fact and therefore subject to the 'clearly erroneous' standard of review set forth in Fed. R. Civ. P. 52(a), any application of that general standard must take account of the special circumstances in which that kind of factual finding is rendered.'" ***Gonzalez v. United States***, 681 F.3d 949, 952 (8th Cir. 2012), *quoting* ***Overton v. United States***, 619 F.2d 1299, 1304 (8th Cir. 1980).

According to Lockhart, the district court improperly applied Missouri law by concluding that Lockhart's shoulder injury was only 20% attributable to the collision (thus awarding only 20% of the medical expenses), after finding the government 100% at fault for the collision. Lockhart asserts Missouri precedent does not allow this reduction. He believes that the district court incorrectly used a "direct result" standard instead of the correct "directly caused or directly contributed to cause" standard. *See* **Missouri Approved Jury Instructions (Civil) 4.01, 19.01** (7th ed.) ("MAI").

-4-

In Missouri, for multiple causes of damages, the "direct result" jury instruction must be changed to "directly caused or directly contributed to cause" in both the liability and damages instructions.  *See **Carlson v. K-Mart Corp.**, 979 S.W.2d 145, 148 (Mo. banc 1998) ("If the 'direct result' language is confusing in the verdict director when there are multiple causes of injury, it is equally so in the damages instruction."), *cited in* **MAI 4.01 n.3**, **19.01 n.2**.  The jury instruction reads:  "If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained that [the collision] directly caused or directly contributed to cause."  **MAI 4.01 n.3**. *See also* **MAI 19.01 n.2**.  True, in the bench trial required by the FTCA, the district court—not a jury—determines the damages.  *See* **28 U.S.C. § 2402**.  However, the Missouri Approved Jury Instructions, as created and interpreted by the Missouri Supreme Court, are the substantive law of the state.  *See **Eubank v. Kansas City Power & Light Co.***, 626 F.3d 424, 427 (8th Cir. 2010) ("When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri.").

Distinguishing "direct result" from "directly caused or directly contributed to cause," Lockhart emphasizes *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993).  Discussing foreseeability in proximate causation, the *Callahan* court quoted the Prosser treatise:  "It is as if a magic circle were drawn about the person, and one who breaks it, even by so much as a cut on the finger, becomes liable for all resulting harm to the person, although it may be death."  *Id.* at 865-66, *quoting* **Prosser and Keeton on Torts § 43**, at 291 (5th ed. 1984).  Illustrating the concept, the Missouri Supreme Court discusses a case where a "blow to [the plaintiff's] back . . . . activated a dormant cancer in his adrenal gland which caused the cancer to spread throughout his body."  *Id.* at 866, *discussing **Heppner v. Atchison, Topeka and Santa Fe Railway Co.***, 297 S.W.2d 497 (Mo. 1956). That case "held that the jury *could* find that the railroad's negligence activated a latent disease *and* that the railroad was liable for all of the resulting harm that flowed from its negligence." *Id.* (emphasis added).  Lockhart contends that under the "directly caused or directly

contributed to cause" standard—and the "magic circle" standard—Missouri law required the district court to fully compensate him for his injury, since the district court found the collision contributed to the injury.

"It is true that a defendant is generally liable for the aggravation of pre-existing conditions caused by his negligence or a statutory violation." *Miller v. Gulf, Mobile & Ohio Railroad Co.*, 386 S.W. 2d 97, 102 (Mo. 1964). "Under Missouri law, the plaintiff in a personal injury action 'is not entitled to recover damages for conditions that are due entirely and wholly to previous disease or injuries,' but '*may* recover for the aggravation of existing ailments caused by the negligent acts of [the] defendant.'" *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 612 (8th Cir. 2011), *quoting Schide v. Gottschick*, 43 S.W.2d 777, 782 (Mo. 1931) (emphasis added).

The controlling Missouri Supreme Court case is *Carlson v. K-Mart Corp.*, 979 S.W.2d 145 (Mo. banc 1998). While at K-Mart, Georgia Carlson "bent down to examine some merchandise on a lower shelf" when "boxes containing crockpots fell on her from an upper shelf, striking her on the face and head and causing her to fall to the floor." *Id.* After that incident, an MRI showed she had degenerative disk disease. *Id.* at 146. Later that year, she was involved in a car accident. *Id.* "At trial, the primary dispute was what part each of these three factors, possible pre-existing degenerative disk disease, the K-Mart incident, and the automobile accident, played in Ms. Carlson's present back injury." *Id.* The Missouri Supreme Court reversed the damage award due to a jury instruction error. *Id.* at 148. The trial court had instructed the jury that the defendant "is liable if he 'directly caused or contributed to cause damage' to the plaintiff, but that the measure of such damage is only that which 'directly resulted' from such conduct." *Id.* Due to the multiple potential causes of injury, the Missouri Supreme Court explained that a "direct result" damage instruction—like a "direct result" liability instruction—would confuse the jury. *Id.*

-6-

K-Mart argued that the "directly caused or contributed to cause" damage instruction would make "it liable for all injuries ever suffered by the plaintiff to her back, whether or not they were caused by K-Mart's negligence." *Id.* The Missouri Supreme Court ruled:

> As noted above, the proposed damage instruction is properly modified to allow recovery only for that damage directly caused or contributed to by defendant's negligence. On the basis of this instruction, K-Mart remains perfectly free to argue, as it did here, that the current condition of plaintiff's back was not directly caused or contributed to by its negligence, and that the automobile accident or natural degenerative disk disease caused plaintiff to suffer damage that was neither caused nor contributed to by the K-Mart incident.

*Id.* The court emphasized the purpose of modifying the jury instruction: to help the jury "identify which causes of injury the plaintiff is entitled to be compensated for." *Id.* at 147.

Under *Carlson*, the Missouri standard of an award for "directly caused or directly contributed to cause" means that the jury can determine that damages suffered solely due to a pre-existing condition were "neither caused nor contributed to by" a collision. *See id.* at 148. Based on the evidence here, the district court found the collision contributed to only 20% of Lockhart's need for shoulder surgery. Lockhart's own orthopedic surgeon opined that imaging indicated advanced degeneration that developed over time and did not result from the traumatic injury—even if the collision triggered symptoms in the left shoulder. The government's expert testified that "the need for the left shoulder joint replacement would have arisen and been necessary due to degenerative changes at the left shoulder whether or not Mr. Lockhart had been in the accident." As in *Carlson*, the district court was "perfectly free" to find "that the . . . natural [arthritic condition] caused plaintiff to suffer damage that was neither caused nor contributed to by" the

collision. *See* **Carlson**, 979 S.W.2d at 148. The district court identified "which causes of injury the plaintiff is entitled to be compensated for" in determining the damage award. *See id.* at 147. *See also* **Kingman**, 643 F.3d at 613 (applying Missouri law and stating that a plaintiff "is not entitled to recover damages for conditions that are due entirely and wholly to previous disease or injuries"); **Sanders v. Ahmed**, 364 S.W.3d 195, 212 (Mo. banc 2012) (describing a situation "in which an injury occurs and the negligence of a third party aggravates the initial injury. In such a situation, the third party would be liable only for the damage attributable to the aggravation and not for the initial injury."). The district court did not err in concluding that, under Missouri law, it could find 80% of the damages attributable to an unrelated pre-existing condition and 20% of the damages attributable to the aggravation caused by the collision.

Lockhart also argues that the district court erred in reducing by 80% both the medical expense and pain and suffering awards.

First, Lockhart contends that the 80% reduction should apply only to the actual cost of the shoulder replacement surgery ($36,528.42), not the "unrelated" expenses (over $17,000), because Dr. Corsolini used the 20% figure only in relation to the actual surgery. "After a bench trial, this court reviews the district court's findings of fact for clear error." **Kingman**, 643 F.3d at 611. "A finding [of fact] is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* "The reviewing court must give due regard to the trial court's opportunity to judge the witness's credibility. . . . A district court's choice between two permissible views of evidence cannot be clearly erroneous." *Id.* at 612. At trial, Dr. Corsolini testified that the 20% applied to the "*need* for the later left shoulder surgery." This need encompasses the medical expenses before and after the surgery—such as the post-surgery physical therapy noted by the district court. The district court did not clearly err in concluding that "Lockhart's total for medical

-8-

expenses incurred in connection with his left shoulder injury totals $53,968.42" and applying the 20% to that amount.

Second, Lockhart argues the district court improperly reduced the pain-and-suffering award by 80%. The district court awarded $10,000 for pain and suffering. In Missouri, an award of medical expenses should be accompanied by an award of pain-and-suffering damages "commensurate with the nature and extent of the injuries." ***Davidson v. Schneider***, 349 S.W.2d 908, 913 (Mo. 1961).

This court generally reviews a district court's award of "non-economic damages under the FTCA for abuse of discretion." ***Wilkinson***, 564 F.3d at 934, *citing* ***St. John v. United States***, 240 F.3d 671, 678-79 (8th Cir. 2001) (relying on *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 419 (1996), which held that "appellate control of the trial court's ruling [on excessiveness or inadequacy of a jury award is] limited to review for 'abuse of discretion.'"). This court "must defer to the district court's assessment of damages unless there is plain injustice or a monstrous or shocking result." ***Id.*** *See also* ***Gonzalez***, 681 F.3d at 952. *See generally* ***Limone***, 579 F.3d at 102 (describing how a review of non-economic damages in an FTCA claim has "three facets": "Raw findings of fact are reviewed for clear error. . . . Claimed errors of law engender de novo review. . . . The third facet of the standard of review relates to matters of judgment, which are reviewed for abuse of discretion.").

In determining the pain-and-suffering amount, the district court reasoned that "credible record evidence indicates that at the time he was discharged from his physical therapy after his shoulder surgery, Lockhart reported no shoulder pain. Further, Lockhart's shoulder is no longer being treated by a specialist related to the shoulder injury." The district court found that the award of "past medical expenses is proper," and thus concluded $10,000 was "commensurate with the nature and extent of Lockhart's injuries attributable to the Government." Because this court finds the medical expense damage award was not in error, the district court did not

abuse its discretion in awarding $10,000 for pain and suffering.  The award is not "a plain injustice or a monstrous or shocking result."


* * * * * * *


The judgment is affirmed.

_____