# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1878

———————————————

Hope Angelic White, Individually and as Personal Representative of the Estate of Myron Pollard

*Plaintiff - Appellant*

v.

United States of America; Bernard Hansen, Individually

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: March 12, 2020
Filed: May 13, 2020

——————————

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

——————————

WOLLMAN, Circuit Judge.

Special Agent Bernard Hansen, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), shot and killed Myron Pollard during an undercover operation. Hope Angelic White, Pollard's mother and the personal representative of his estate, brought suit against the United States under the Federal Tort Claims Act (FTCA) and

against Hansen under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Following a bifurcated trial, the district court[1] held in favor of the United States, and a jury returned a verdict in favor of Hansen. White appeals, arguing that the district court erred in concluding that Hansen did not breach his duty of care, in denying her motion for a new trial on the <u>Bivens</u> claim, and in ruling on the admission of certain evidence. We affirm the judgment entered on the FTCA claim. We vacate the judgment entered on the <u>Bivens</u> claim and remand with instructions to dismiss the action as barred.

## I. Background

ATF special agents were investigating several suspects believed to be committing violent crimes in the St. Louis, Missouri area. A confidential informant introduced the suspects to an undercover agent who was posing as a drug courier and who made plans with the suspects to rob a drug stash house. The suspects informed the agent during the course of the planning that they intended to kill the occupants of the drug stash house. The confidential informant told the undercover agent that the suspects also planned to kill the agent after the robbery and take his share of the drugs. Because of the high-risk nature of the operation, ATF's Special Response Team (SRT), of which Hansen was a member, was brought in to assist with the arrest of the suspects.

Hansen learned of this background information during a pre-operational briefing on the morning of the arrest. He, along with the other SRT members, were also briefed on the plan to arrest the suspects. The undercover agent had arranged to meet the suspects at a parking lot later that morning and had told the suspects that he would then lead them to the robbery-targeted drug stash house.

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

The ATF's plan called for the undercover agent to drive a U-Haul truck containing hidden SRT members into the parking lot to meet the suspects. Once the agent confirmed the suspects' willingness to commit the robbery, he would send a signal to the SRT, whose members would then leap from the truck and arrest them. Hansen was assigned to be the first member to jump from the truck and to be responsible for identifying any threats, shouting "Police," and providing cover for the other SRT members as they exited the truck.

The briefing completed, the SRT members entered the back of the U-Haul, which the undercover agent then drove to the appointed parking lot. Hansen and the other SRT members were thereafter informed that two suspects had arrived on foot and that several individuals had arrived by car. The undercover agent confirmed that the suspects were willing and ready to commit the robbery and then gave the signal to initiate the arrest.

Upon hearing the appropriate command, Hansen jumped from the U-Haul, shouting "Police. Let me see your hands." multiple times. Hansen saw the suspects' car for the first time upon jumping from the truck, observing that it was approximately twenty-one feet away from him and the other SRT members. Hansen then saw the car's reverse lights light up and heard the engine rev. Hansen feared that the suspects' car was going to hit the agents. Upon seeing the car begin to back up, Hansen fired three shots at the driver's side. Another SRT team member exiting the U-Haul also fired three shots at the car. The car was ultimately disabled when it collided with an agent-driven bucket truck. Approximately four seconds passed from the time Hansen exited the U-Haul to the time of the collision.

Of the three shots Hansen fired, two struck the backseat passenger and one struck and fatally wounded Pollard, who was seated in the front passenger's seat. Pollard was not a suspect in the investigation and was not known to Hansen or the SRT at the time.

The ATF had set up four video cameras to record the incident. One camera was placed high on a pole and transmitted an image frame every two to four seconds. The recording did not show any images from the moment SRT members exited the U-Haul to the moment the car was disabled. An ATF agent testified that the lag was likely caused by a disruption of the wireless signal from the camera to the server. Two cameras were mounted under a tractor-trailer that was parked in front of the U-Haul. The ATF agent explained that because one of those cameras had malfunctioned before any vehicles entered the parking lot, it did not record the incident. The other camera recorded the incident, but its relatively low resolution made it difficult to make out any fine detail. The fourth camera was mounted on an ATF surveillance vehicle that was parked in an alley near the parking lot. It was trained on the suspects' car, but any useful view of the shooting was obscured when the bucket truck drove into its line of vision. Three of the four cameras wirelessly transmitted data to servers at various locations. The fourth camera transmitted data directly to a server in the surveillance vehicle. The ATF made copies of the incident from the original servers, but not of the entire recordings. The ATF later erased the data from the original servers.

White moved for sanctions for spoliation of the evidence, claiming that the ATF had wrongfully deleted the data of the recordings from the original servers without making copies of the full recordings. The district court denied the motion, finding that the ATF did not act in bad faith when it deleted the data. Following a five-day trial, the jury found in favor of Hansen on the Bivens claim. The district court concluded that the FTCA claim was barred by the public duty doctrine and that, even if that doctrine did not apply, Hansen had not breached any duty owed to Pollard. It denied White's post-trial motions and entered judgment in favor of Hansen and the United States.

## II. Spoliation

White argues that the district court should have drawn an adverse inference against the United States because the ATF wrongfully deleted data from its servers without making copies of the entire recordings.[2]  She argues that the original recordings would have shown that Hansen fired shots after the car was disabled by the bucket truck.  "Severe spoliation sanctions . . . are only appropriate upon a showing of bad faith."  Stepnes v. Ritschel, 663 F.3d 952, 965 (8th Cir. 2011).  The district court's finding that the ATF did not act in bad faith is supported by evidence that the interruption of the wireless signal likely caused the problems with the recordings and that the ATF followed its standard procedure in copying data and deleting it from its servers.  White proffered no evidence to support an inference that the original recordings were intentionally destroyed to suppress the truth or to contradict any of the government's evidence.  We thus conclude that the district court did not abuse its discretion in deciding not to draw a negative inference.  See Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 811 (8th Cir. 2005) (standard of review).

## III. FTCA Claim

The FTCA waives sovereign immunity and allows the government to be "held liable for negligent or wrongful acts by federal employees committed while acting within the scope of their employment."  Washington v. Drug Enf't Admin., 183 F.3d 868, 873 (8th Cir. 1999); see also 28 U.S.C. § 2674.  When evaluating FTCA claims,

---

[2]White argues that the district court abused its discretion when it denied her motion for sanctions and refused to give an adverse inference instruction to the jury. We do not address these arguments, however, because as addressed more fully below, White's Bivens claim is barred by the FTCA judgment.  See  28 U.S.C. § 2676.  We thus address her spoliation argument only as it relates to the FTCA claim.

we review the district court's findings of fact for clear error and its conclusions of law *de novo*. Lockhart v. United States, 834 F.3d 952, 955 (8th Cir. 2016).

To determine the extent of the government's liability under the FTCA, we look to state law, which, in this case, is Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080. See Molzof v. United States, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law."). To prove liability under Missouri's wrongful death statute, White was required to establish that Hansen owed a duty to Pollard, that he breached that duty, and that the breach proximately caused Pollard's death. See Lopez v. Three Rivers Elec. Coop., Inc., 26 S.W.3d 151, 155 (Mo. 2000) (en banc). The parties have not defined the specific duty owed in this case, but they agree that Hansen had a duty to act reasonably under the circumstances. See, e.g., Chavez v. Cedar Fair, LP, 450 S.W.3d 291, 294 (Mo. 2014) (en banc) ("[Missouri's] common law ordinary negligence rule requires a defendant to exercise the degree of care of a reasonable person . . . under similar circumstances."). Under Missouri law, Hansen's use of deadly force was reasonable if he reasonably believed that such force was necessary to protect himself or other agents against death or serious physical injury. See Mo. Rev. Stat § 563.046.3(2)(c) (allowing an officer to use deadly force if "the officer reasonably believes that such use of deadly force is immediately necessary to effect the arrest . . . and also reasonably believes that the person to be arrested . . . [m]ay otherwise endanger life or inflict serious physical injury to the officer or others"); see also id. § 563.031.2(1) (permitting deadly force if the person "reasonably believes that such deadly force is necessary to protect himself . . . or another against death, serious physical injury, or any forcible felony").

White argues that the district court erred in determining that Hansen had acted reasonably and thus did not breach his duty of care when he shot at the car during the

arrest.[3] The district court found that Hansen knew that the suspects would be armed and that the arrest would be dangerous. As the first agent out of the U-Haul, Hansen was responsible for protecting the other agents who were jumping out "blind and had to turn their bodies in order to see the suspects." D. Ct. Order of Mar. 29, 2019, at 29. Hansen believed that the rearward-moving vehicle might kill or seriously injure himself or the other agents. "[T]he car appeared to be reversing directly at the agents when it first started reversing out of its parking spot . . . traveling at over 15 miles per hour." Id. In light of these facts, the district court properly determined that Hansen reasonably believed that deadly force was necessary to protect himself and the other agents from the vehicle and that he had acted reasonably by firing his service weapon. It thus did not err in entering judgment in favor of the United States on the FTCA claim.

## IV. Bivens Claim

White also argues that the district court erred by denying her motion for a new trial on the Bivens claim because the jury lacked sufficient evidence to find in favor of Hansen. We find it unnecessary to address this argument, however, in light of our holding that the FTCA judgment bar precludes the Bivens claim.

---

[3]The district court alternatively held that the public duty doctrine barred White's FTCA claim because Hansen owed no duty to Pollard. See D. Ct. Order of Mar. 29, 2019, at 26; see also State ex rel. Barthelette v. Sanders, 756 S.W.2d 536, 538 (Mo. 1988) (en banc) ("The public duty doctrine holds that a public employee may not be held civilly liable for breach of a duty owed to the general public, as distinguished from a duty owed to particular individuals." (internal quotation marks and citations omitted)). We have not addressed whether the public duty doctrine applies to FTCA wrongful death claims, and the government has not asked us to apply the doctrine here. White's claim fails under either the negligence standard for a private citizen or the public duty rule. See Sorace v. United States, 788 F.3d 758, 763 n.3 (8th Cir. 2015).

The FTCA's judgment bar provision states that a "judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676; see also Simmons v. Himmelreich, 136 S. Ct. 1843, 1847 (2016) ("Under the judgment bar provision, once a plaintiff receives a judgment (favorable or not) in an FTCA suit, he generally cannot proceed with a suit against an individual employee based on the same underlying facts."). We join other circuits in holding that the FTCA's judgment bar provision precludes a Bivens claim regarding the same subject matter, even if the claims arose within the same suit. See Unus v. Kane, 565 F.3d 103, 121-22 (4th Cir. 2009) (holding that summary judgment award on FTCA claims barred Bivens claims arising out of the same subject matter); Manning v. United States, 546 F.3d 430, 434 (7th Cir. 2008) (holding that an FTCA judgment bars a Bivens claim raised in the same suit); Harris v. United States, 422 F.3d 322, 333 (6th Cir. 2005) (same); Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 858-59 (10th Cir. 2005) (same); Arevalo v. Woods, 811 F.2d 487, 490 (9th Cir. 1987) (same); see also Carlson v. Green, 446 U.S. 14, 19-20 (1980) (noting that it is "crystal clear that Congress views FTCA and Bivens as parallel, complementary causes of action").

White does not dispute that the FTCA and Bivens claims are predicated on the same conduct and regard the same subject matter. Because the district court's entry of judgment for the United States on White's FTCA action bars the Bivens action against Hansen, the case must be remanded to the district court with directions to vacate the judgment for Hansen and dismiss the Bivens claim.[4] See Aguilar, 397 F.3d

---

[4]Having concluded that the Bivens claim is barred, we need not decide certain challenges to the district court's rulings during the jury proceedings. As to the evidentiary challenges relevant to the FTCA claim, we hold that the district court did not abuse its discretion in admitting evidence regarding the suspects' armed robbery plans. See Davis v. White, 858 F.3d 1155, 1159-60 (8th Cir. 2017) (standard of review). That evidence was relevant to whether Hansen acted reasonably when he

at 859 (remanding to the district court to vacate and dismiss the <u>Bivens</u> action when applying the FTCA judgment bar).

We affirm the judgment entered on the FTCA claim, vacate the judgment entered on the <u>Bivens</u> claim, and remand with directions to dismiss the claim as barred.

———————————————

shot at the suspects' car. <u>See</u> <u>Church v. Anderson</u>, 898 F.3d 830, 833 (8th Cir. 2018) (holding that "severity of the suspect's crime" and "whether the suspect was threatening the officers or others" are factors used to assess the reasonableness of officer's force); <u>United States v. DNRB, Inc.</u>, 895 F.3d 1063, 1068 (8th Cir. 2018) ("[W]e presume that a judge conducting a bench trial will use evidence properly, mitigating any prejudice."). We also conclude that the district court did not abuse its discretion in admitting evidence of one of the witness's convictions. <u>See</u> Fed. R. Evid. 609(a)(1); <u>Jones v. TEK Indus., Inc.</u>, 319 F.3d 355, 360 (8th Cir. 2003) (holding that district court did not abuse its discretion in allowing enumeration of specific convictions).